### SIDNEY WILSON v. THE STATE.

#### No. 4082. Decided May 31, 1916.

**1.—Murder—Manslaughter—Charge of Court.**

Where, upon trial of murder, the court submitted in his charge only murder and self-defense, but the evidence raised the issue of manslaughter upon which the court refused a requested written charge, the same was reversible error. Prendergast, Presiding Judge, dissenting.

**2.—Same—Rule Stated—Manslaughter.**

It is the well settled rule in Texas that if there is evidence, however weak or inconclusive it may seem to the court, if it tends to prove facts from which the jury may deduce a finding of manslaughter, it is error to fail to charge that issue.

**3.—Same—Newly Discovered Evidence.**

Where the alleged newly discovered evidence was material, this should cause a reversal. However, the same may be obtained at another trial. Prendergast, Presiding Judge, dissenting.

Appeal from the District Court of Nueces. Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*G. R. Scott, Boone & Pope, Claude Lawrence,* and *Gowan Jones,* for appellant.—On question of manslaughter: McCampbell v. State, 174 S. W. Rep., 345; Rutherford v. State, 15 Texas Crim. Rep., 236; Williams v. State, 15 Id., 617; Arnwine v. State, 90 S. W. Rep., 39.

*C. C. McDonald,* Assistant Attorney General, for the State.—Upon question of newly discovered evidence: Johnson v. State, 167 S. W. Rep., 733.

DAVIDSON, JUDGE.—Appellant was convicted of murder, his punishment being assessed at five years confinement in the penitentiary.

The court submitted only murder and self-defense. Appellant reserved exception to the court's charge for failing to instruct the jury on the law of manslaughter, and in addition wrote out and requested a charge on manslaughter, which was refused by the court. These matters are all properly presented. Without giving a detailed statement of the evidence, it is substantially shown that appellant shot and killed his wife. Three shots took effect. It is in evidence that there were two other shots fired with an interregnum between the first and second shots, the second shot giving out a muffled sound. It is further in evidence that the clothing of deceased was torn, and the room presented the appearance of there having been a struggle. There was a struggle between appellant and deceased, testified to by several witnesses. Appellant belonged to a negro band, and also a club. He had been playing at the club on the evening preceding the homicide. On his return to the house his wife asked him why he had not come home as early as some of the other members of the band, and accused him of being with another woman. This he denied, in substance stating that he had come away with the other members of the band from the club. She informed him she was going to kill him, secured a pistol and at once fired. A scuffle ensued and the pistol went off again while they were on the floor. This is the shot that gave the muffled sound. He succeeded in getting the pistol. She again informed him she was going to kill him, went in an adjoining room, got an ax, and was approaching him when he fired. As she approached him he warned her off and told her not to kill him. There is some testimony also that the mother of appellant interceded with deceased and asked her not to kill her son. There was a short interregnum between the first and the second difficulty. The last three shots were fired in rapid succession. The State's witnesses, who entered the house immediately after the shooting, state they saw no ax in the room. Some of them did not even see the wardrobe and some other things in the room One witness testified that the ax was there and used in opening the wardrobe This witness was sent in by the officers to see the defendant, both being negroes. One of the officers testified that when he called on appellant from the window to surrender or let him in the house, appellant told him he would not; that if he came in the room he would shoot him. So the other negro

went in and induced appellant to surrender his pistol and come out. In talking with appellant as he entered the room, appellant said he would go but he must get his money and a shirt. The money was in the wardrobe. Failing to find the key he took up the ax and battered in the door of the wardrobe or prized it open and got his money but did not get a shirt, as the witness was urging him to come out to the officers.

Without going further into a detailed statement, this testimony, in our judgment, raises the issue of manslaughter. There was a conflict in the evidence as to whether the ax was in the room or not, and if not in the room, that part of the testimony could be disregarded by the jury, or given such weight as they deemed proper. If the ax was not used or the deceased did not have the ax and appellant shot her just after she fired twice, the issue of manslaughter from that viewpoint would be in the case. There was no cooling time between the shots she had fired and those fired by him. The struggle and shots by his wife were calculated to disturb the equilibrium of appellant's mind and render it incapable of cool reflection. Upon this view of the case manslaughter should have been charged. It is well settled in Texas, and by such an unbroken array of authority it ought not now to be a matter of discussion, that if there is evidence, however weak or inconclusive it may seem to the court, which tends to prove facts from which the jury may deduce a finding of manslaughter, it is error to fail to charge that issue. These authorities are found collated in volume 2, Branch's Annotated Penal Code, section 2045. They are too numerous to be repeated in this opinion. The contention of the State seems to be that inasmuch as the defendant testified that she was approaching him with an ax at the time he shot her, that, therefore, the issue of manslaughter was not in the case, and the only two issues were murder and self-defense. It has been so often decided that the law must be charged to the jury to meet every issue deducible from the facts that I do not care to discuss it. If the State's theory is correct, and that line of reasoning is to be the settled law, then the testimony of the defendant would make a case purely of self-defense and he should have been acquitted. The theory of the accused would constitute the case. There was a case originally written advancing that proposition, but it was quickly overruled, and the other proposition, that is, that the charge must meet every issue in the case, was reasserted and maintained. The jury may not have believed the defendant's testimony either in whole or in part. The jury may take part of the testimony as being true and discard some as being unworthy of consideration in making up their verdict; but the court can not settle that question. The jury alone can settle the weight to be given to the testimony of the witnesses and their credibility, but appropriate instructions must be given by the court. The writer believes that manslaughter was in the case, even if the jury should believe the testimony introduced for the defense to the effect that the woman had gone to the kitchen and secured an ax and was approach-

ing him with it.  She had fired at him twice and undertook to kill him by this means, and when the pistol was taken from her she secured and was returning with an ax.  She was not in striking distance with the ax, and she may not have been in such condition ,that she could have inflicted death or serious bodily injury with the ax; he may have shot too quick.  His mind was not in a condition to weigh the facts cautiously and deliberately, having been just fired at twice, followed by a serious struggle in which he succeeded in getting the pistol from deceased.  I do not care to discuss this phase of the case further.

There is another question of very serious moment on the theory of newly discovered testimony.  This is not discussed in view of the reversal of the judgment.  It will not be newly discovered upon another trial, and may be obtained.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HARPER, JUDGE (concurring).—I agree that the facts in this case probably raise the issue of manslaughter with that cogency that required a submission of that grade of offense.  It is true that the State's evidence makes a case of murder, and that the testimony of defendant would make a case of perfect self-defense, and a casual reading of the record would perhaps incline one to the opinion that these were the only issues raised.  The State would have a fatal shot fired while the woman was on the floor.  The defendant testifies to going home, a family row, his wife obtaining a pistol and shooting at him, a scuffle in which the pistol was again fired; that he got the pistol from her, when she secured an ax and started at him, when he shot three times with the pistol he had taken from his wife.  Several witnesses testified for defendant to seeing the ax in the room, while the State in its rebuttal testimony presented its proof to show that there was no ax in the room, and under this evidence, as made by the record, the jury would be authorized to find that the assault with an ax, after the pistol had been taken from her, was untrue; and this would leave defendant's case that he had gone home, when a family row ensued; that his wife shot at him, when a scuffle ensued, a second shot being fired during the scuffle; that he then succeeded in taking the pistol from her, and he fired three shots, killing her.  If this was all the testimony, we do not think anyone would question the fact that this testimony would raise the issue that the killing took place under circumstances tending to show passion and fear raised by an adequate cause.  We have understood the rule to be, that if from the evidence as a whole a jury would be authorized to conclude that the killing occurred under a given state of facts, that issue should be submitted in an appropriate charge, and the writer agrees to a reversal because of the failure to submit the issue of manslaughter.  Again, while perhaps there is not shown due diligence in seeking to find out what could be proven by the witnesses alleged to be newly discovered, yet the facts sworn to by these witnesses would be

most material. If it had been proven to the satisfaction of the jury that an ax was found in the room; a different result may have been reached   Officer Carson says he was one of the first persons to enter the room where the dead woman was found; that the ax was in the room, and he used the ax in nailing up a door. Mr. Cathey also swears to material facts on this issue   If the facts testified to by defendant are true (and there is no other eyewitness to the tragedy), no one would question he was justified, and the evidence of Carson and Cathey would tend strongly to support his testimony. According to this record he had been assaulted twice before by deceased, being shot once and cut another time. The reputation of deceased was that of a violent and dangerous woman, she being under indictment for assault to murder at the time of the homicide. I am of the opinion that justice demands a new trial in order that all the evidence may be heard and all the issues raised thereby submitted.

PRENDERGAST, Presiding Judge (dissenting).—I have carefully studied this record from every phase. I do not agree to the statement of the evidence as made. It absolutely disproves from the whole or any item of testimony, the idea of manslaughter   If the opinion as to manslaughter should prevail under the facts of this case, then manslaughter would be in every homicide except a cold-blooded assassination. This decision is in the face of the statute and all well considered cases. ·

The evidence also excludes the question of newly discovered testimony. The very slightest diligence would have procured the evidence now claimed to be newly discovered. Parties must get their testimony before the trial—not take chances on an acquittal and when convicted, then claim to discover new evidence